19-2932 from the District of Minnesota, John Petitta v. 3M Company. Mr. Ferrari, you may proceed. Thank you, I'm sorry. May it please the court, my name is Kyle Ferra, I represent Mr. Petitta in this case. Ultimately, this appeal involves the violations of core principles of federalism that dictate that federal courts may not unduly interfere with legitimate activities of the state. That notion goes back to the 1700s. Texas has a vested interest in protecting its injured citizens and giving them access to the courts. The U.S. Supreme Court held recently in Smith v. Bayer, the Anti-Injunction Act, quote, commands that those tribunals shall remain free from interference by federal courts. The Supreme Court has reiterated it over and over and over again. Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. And in fact, the Supreme Court goes on to say, because whether and how prior litigation has preclusive effect is usually the bailiwick of the second court, every benefit of the doubt goes towards the state court. The MDL court violated those core principles and issued an injunction and in doing so made serious errors of law and clearly erroneous findings of fact, all of which require reversal. The first serious error of law the MDL court made was when it held, and I quote, when parties to a previous lawsuit agree to dismiss a claim with prejudice, such a dismissal constitutes a final judgment on the merits for purposes of res judicata. So what the court held there is if a dismissal, a rule 41 dismissal has on the merits, that means there's res judicata. That's not the law. The court cited this court's opinion in Larkin from 1999. But what the court failed to do is read the next sentence. And the next sentence says you have to look at the intent of the parties as to the dismissal. But more fundamentally, the court ignored the binding precedent from CEMTEC, the United States Supreme Court, which is after Larkin, two years after Larkin. CEMTEC, Judge Scalia writing for a unanimous court, said as a rule of decision, a rule 41 dismissal of claims in their entirety on the merits and with prejudice is necessary, but not a sufficient condition for claim preclusion in a different court. So what CEMTEC tells us is if you have the words on the merits or if you have the words with prejudice in your dismissal, your rule 41 dismissal, you can't file in that case in that court anymore. But you can potentially file in other courts. You have to look at the intent of the parties. That's what Larkin also says. Look at the intent of the parties. I do have a question in that regard. So I certainly would agree with you that CEMTEC controls this area of law. But aren't parties also free to stipulate to a choice of law provision that might be different than what would be provided in the absence of such a stipulation? I assume the parties could stipulate to a choice of law. I don't know how that would have happened here. I mean CEMTEC really is a rule of decision that says a rule 41 dismissal on the merits is not sufficient for claim preclusion. You just have to have more. I mean if you look back since the Anti-Injunction Act was amended in the 40s and then again in the 50s, there's not a single Supreme Court case that upholds an injunction on the relitigation exception to the Anti-Injunction Act. It doesn't happen because it's such a narrow issue, and you have to look at the underlying facts. And if we look at the underlying facts in this case, in CEMTEC, the dismissal was all claims in their entirety on the merits and with prejudice. Mr. Petita's dismissal was significantly different. It was the above-captioned case be dismissed with prejudice. And that makes a lot of sense because he had two pending cases right then. So of course he's going to dismiss the above-captioned case, not the other pending case. So counsel, if I can follow up on Judge Graz's question, recognizing the Supreme Court case for the general principles of this relitigation exception, don't we still have to go to a particular state law or federal law? Do we have to go to a particular law to determine what the preclusive effect is? I don't think so, Your Honor. CEMTEC says, is the United States Supreme Court issuing a rule decision as to the language of a Rule 41 dismissal? So the Texas court couldn't come in and say, no, no, no, that Rule 41 dismissal means something different. The Supremacy Clause wouldn't let them do that. So because CEMTEC has defined exactly what with prejudice means in a Rule 41 dismissal, which this was a Rule 41 dismissal, you really don't need to get to the state court laws to determine the preclusive effect of that dismissal. Your Honor, I was going to focus on the intent of the parties because I think that's important, and that's important if you imply CEMTEC or Larkin or even if you wanted to get to the Texas or Minnesota substantive laws on res judicata. The intent – and the court made a clearly erroneous finding whenever – which requires reversal whenever it held that you couldn't decide the intent of the parties. At 51 and 52 – well, I guess a little bit of background. I'm sure the court knows this. But Mr. Petito struck a deal with 3M in late 2016, early 2017 where he said, I'm going to give up the MDL's benefits, the cost sharing, the potential orders that came out that could be beneficial, and I'm going to go it alone in Texas. And it's evidenced by their email exchange. In December of 2016, this is at 51, 3M emails Mr. Petito's counsel and says, until you're able to confirm which case will proceed, we're not going to take action in the state court case. Mr. Petito's counsel emails 3M right back and says, we have concluded that my lawsuit will continue in Texas District Court on behalf of Mr. Petito. Mr. Petito's other counsel, the one that filed the MDL lawsuit, emails again that exact same day and says, we can discuss the form of that stint. Clearly, the indication was they were going to proceed in Texas, and the best evidence that they were going to proceed in Texas is they proceeded in Texas for two and a half years where 3M answered discovery, served discovery, deposed Mr. Petito for five hours. There is no doubt that the intent of that dismissal was to allow Mr. Petito to present his claims in Texas, and he dismissed, as the dismissal says, his case, the above-captioned case in the MDL, forever. That's what that dismissal meant. The with prejudice says I can never come back to the MDL, but SEMTEC tells us that doesn't mean you can't go to a different court. And even if we want to get out of the language of that, the Relitigation Act – and to be clear, this isn't an issue where I say the Texas court may not – 3M may have their res judicata defense at the Texas court. This is the relitigation exception to the Anti-Injunction Act should not apply. The federal court should not step in on this. And in fact, as we know, there was the orderly conclusion of that defense at the Texas state court. It was fully briefed on summary judgment. There was an oral hearing literally hours before the injunction came down. The federal court should have never stepped in and joined the state court from its orderly process. That's what our United States Supreme Court says over and over and over again. The relitigation exception has to be narrowed. And more fundamentally, as the U.S. Supreme Court said in Chick-Cam-Chu in Atlantic Coastline, an essential prerequisite for applying the relitigation exception is that claims or issues which the federal injunction insulates from litigation and state proceedings actually have been decided by the federal court. So in Chick-Cam-Chu, what the U.S. Supreme Court said was let's really dig deep and see what issues were decided by the federal court. And it said, yeah, the choice of law between Singapore maritime law and the United States definitely decided that plaintiff cannot relitigate that in Texas state court. But forum nonconvenience wasn't because the forum nonconvenience in Texas state court versus federal forum nonconvenience law is a little bit different. So you can't enjoin that. Humor me for a minute and help me understand what your view would be if we were to apply either Minnesota or Texas law on the issue of the claim preclusion for the relitigation exception. What is your view? Well, it's not claim preclusion under either one and for multiple reasons. One, again, SEMTAC controls what that dismissal means. So a Texas or Minnesota court couldn't apply a different standard as to what prejudice under Rule 41 means. But under Minnesota law, on a ratio to cut issue, the I have in front of me. I'm sorry. Well, it's it's but it's a fundamental fairness. Or what would the what would be the hardship to the person that ratio to cut is being applied to? I think the word you're looking for is injustice. And I was going to ask I was going to ask about that, too. If Minnesota law does apply here, it appears that the MDL court failed to conduct an injustice analysis. But is that really reversible error in this context? We've got an MDL court trying to prevent a collateral attack on its judgment. So does it really need to do that analysis in this unusual context? Well, it does. And the Seventh Circuit in recently in Atkins versus Nestle Purina Pet Care says you have to do that analysis. And not only do the analysis, you have to have a you have to write it down. And when it doesn't happen with the Seventh Circuit said is that won't do. You have to do the analysis of all four factors. Demonstrate three and had to prove that it would succeed on the merits, that there would be a likely to suffer irreparable harm. Balance of the equities, which is sort of what the Minnesota rule is in public interest. And the court just failed to do that. And frankly, 3M failed to present evidence on those points. And if your honors don't mind, I'm going to reserve the rest of my time for rebuttal. Well, thank you, Mr. Farrar. Mr. Halsey. Thank you, your honors. Ben Hulse for 3M. And may it please the court. I'd just like to to address the court's questions in order. I think I've got got the right order here. First is is the question of Semtec and what Semtec means. What Semtec is, is essentially a federal rule of decision, a default rule that when determining res judicata effect, the federal court sitting in diversity will look to stay law. It's not an absolute rule, however, as as the Supreme Court's opinion makes clear. There are cases where there are important federal interests at stake, where the federal court sitting in diversity is not going to look to state law. Ultimately, our point and the district court's point was it doesn't matter because the result here, res judicata applies under federal law, Minnesota law or Texas law. But there is a sound basis here for applying federal law. In fact, there are a couple of them. The first is the fact that we do have at stake a very standard form rule. Forty one, a stipulation of dismissal with prejudice. These are the kinds of stipulations that are routinely entered in thousands, perhaps tens of thousands of federal cases every year. The Supreme Court said Semtec, quoting Wright Miller, that with prejudice, which is the language we have here, means on the merits. It is well accepted in the profession, in the courts and has been for a very long time that a stipulation of dismissal with prejudice has res judicata effect. What the plaintiff's position here on appeal would threaten to do is put the hand put in the hands of state courts all over the country. determination of what a rule 41 stipulation of dismissal with prejudice means. There is an important federal interest in having uniform federal interpretations of federal rules. That was not at stake in Semtec, where the question was application of state statutes of limitations. Counsel, here we have it's kind of it's a little unusual because we've got an MDL, which by its very nature is bringing in a number of individual cases from perhaps 50 states to one location. Is it the same same federal interest that you're expressing here that would be applied to an MDL? In fact, it's an additional federal interest, Your Honor, and a greater one. This court is recognized in the in the Bay call case, though that was reversed on the Supreme Court on other grounds. The Seventh Circuit is also recognized in the Winkler case that there is an important federal interest in the conduct of orderly multi district litigation. That is what the district court is charged with. What the district court mentioned in its opinion is that there were hundreds of cases that had been dismissed with prejudice in the MDL, some by stipulation, some as the result of discovery violations. And so there's an important federal interest in ensuring that those cases, those hundreds of cases that have gone through the MDL are then not subject to the arguments that they could be relitigated in state court or start up in state court. That does not accomplish the purpose of multi district and coordinated litigation. Do you have any cases that support the idea of applying federal law in the context of the relitigation exception, which we've been instructed is a very narrow exception? Indeed, Your Honor. And and the I think this the Smith versus Bayer case, which does address Semtec, too, is is acknowledging that there are federal interests that can be at stake in the context of the relitigation exception. And I'd go back to Semtec itself to Semtec gave as the exception where federal law is going to apply to rest. You caught the example of a state or rather a federal court's protection of its discovery orders or orders for discovery violations. And that actually takes us right to what happened in this case. Counsel, let me let me just back up a bit. I'd like to go back to my first question. And you addressed this, I think, on page 17 of your brief and it's set forth on page 26 of your appendix. And that's the stipulated choice law provision for the MDL litigation. So I'd like to ask you once again, which controls here, the party's stipulation or Semtec? Yes, Your Honor. So the parties stipulated through the the process that set forth in pretrial order number five that I shouldn't say it's a stipulation. It's simply an election by the plaintiffs that Texas choice of law rules would apply. And so what we then argued is if the federal law doesn't apply to res judicata, then Texas is the next stop. And so in going there, the plaintiffs are not have not been able to point to any Texas case that wouldn't apply res judicata effect to a stipulation of dismissal with prejudice. And in fact, in fact, Your Honor, the Bell versus Moore case from the Texas Court of Appeals from 1992 says, in general, if the dismissals with prejudice res judicata applies. While there's that caveat in general, there's no subsequent case from the Texas Court of Appeals or the Texas Supreme Court that wouldn't apply res judicata here. It would be just as disruptive at the Texas courts as it would be in the federal courts if we had stipulations of dismissal of prejudice that essentially had no res judicata effect. So I I'm not sure if I've fully answered your question, Judge Bras. Well, I think it's a fairly, I guess, basic question is if the parties stipulate to something, isn't that what they do rather than what the Supreme Court would direct in the in the case where they didn't say what they wanted to do? I'm not sure, Your Honor, and I'm not sure it matters again, because as the the district court went through Texas law, federal law and Minnesota law and concluded they all apply in the same direction. If, again, the parties or the election of the plaintiffs through the pretrial order number five is governing versus versus this sort of standard semtech analysis that points us to Texas law and Texas law makes clear that res judicata is going to apply here. At the time this dismissal was filed, do you dispute that it was the party's understanding that this case would go forward in a Texas state court? We do dispute that, Your Honor. And I'd like to address that. Why did you wait two years to raise a res judicata defense in the Texas state court? Your Honor, the Texas state court case was actually stayed for an extended period of time. Essentially, what happened is after the stipulation of dismissal with prejudice, what happened is a codefendant in the state court case filed a motion to dismiss. It was denied. They appealed to the Texas Court of Appeals. That resulted in a automatic stay that was then not lifted until the end of twenty eighteen. We were faced also with a procedural dilemma. Our conclusion was that if we filed a motion, a res judicata motion in Texas state court, a summary judgment motion, that we were at risk of losing other summary judgment arguments. It wasn't clear to us and we didn't believe that we could file serial summary judgment motions. So we held off. But then what happened is this. Or just to just to give a little bit background, as the court may be aware from the Amador briefing, there was highly contentious and contested issues over sealing and confidentiality of documents in the district court. Concerned a particularly a subset of documents that the district court repeatedly ordered sealed. There were efforts by the MDL plaintiff's counsel to disclose those publicly, which then ultimately culminated in an order from the MDL magistrate judge threatening sanctions if for any further public filings of sealed materials. And that was on January twenty fifth of twenty nineteen. And I would add those those documents or those particular three documents were in fact then publicly disclosed by the appellant's counsel in the Amador argument earlier today. I'm sorry, I'm going to circle back again. I do think this is a difficult case. And I've got another another question. It seems to me that if federal common law is applied here, that it very well may lead us to Minnesota law. And how do you get around the fact that the district court or the MDL court did not conduct an injustice analysis, which seems to be required under Minnesota law? Your honor to two responses. First, we think that the court did. In fact, the MDL court did, in fact, made the findings that were sufficient to address the injustice question. The district court at the 10th addendum, page six, said, quote, even if a petitioner's counsel communicated a desire to pursue the state court claim in December twenty sixteen, he later proposed and signed a stipulation for dismissal with prejudice in April twenty seventeen. So the court was getting right to and addressed the plaintiff's contention that it would work in injustice because they supposedly had agreed or intended otherwise. There's also the loss versus county of Asante case, 638 F3rd 853, which I believe was authored by Judge Grunder, which declined to remand the district court on a finding of injustice on Minnesota res judicata law because res judicata itself promotes important interests and finality and avoidance of piecemeal litigation. So even though there was an express finding by the district court in the last case that did not result in a remand. So the question under Minnesota law under the state versus Joseph case from the Minnesota Supreme Court is really whether there was any procedural limitation that prevented the plaintiff from prosecuting his claims. Plaintiffs haven't pointed to and there was no procedural limitation that prevented them from prosecuting their claims. They simply stipulated to a dismissal with prejudice. So that's what the injustice prong of Minnesota law means. And the district court's findings were sufficient to satisfy. Do you think that under Minnesota law they would consider a mutual mistake or erroneous inclusion of the word with prejudice? Is that sort of something that Minnesota state courts would consider in looking at the injustice? There's no indication of that, Your Honor. There's no case that the plaintiffs pointed to or that we've been able to find that would suggest that that's a consideration. And I'd add that this is we don't agree that this is a case of mutual mistake. While the plaintiffs indicated their intent to go forward with the state court case back in December of 2016, four or five months then passed. They then presented us with a stipulation of dismissal of prejudice. They sent us an email that said this is a stipulation of dismissal of prejudice. We drew their attention to it. They added it to the title and then and then filed it. There has never been a declaration or statement from the plaintiff's counsel in the MDL court indicating I made a mistake. I didn't intend this. There's no declaration that was filed. But they did continue to litigate the case in Texas. So, correct. They did, though, as I mentioned to Your Honors, there was a extended stay in place. And then we moved within a fairly rapid period of time for the injunction once things resume. And the particular urgency then with which we then moved for the injunction was motivated by the MDL counsel who'd just been admonished to stop publicly disclosing sealed documents in the MDL court. I have a question about that. Was there any discussion of limiting the injunction, limiting the district court's order to something like the Seventh Circuit case that you've referred to, which is stop as to our discovery orders as opposed to the entire case? No, Your Honor. And that's because of the impact of the stipulation of dismissal of prejudice. If we didn't have that, perhaps that would have been an avenue for the district court. But the primary basis, of course, for our motion and then the district court's order is the fact that we've got a stipulation of dismissal of prejudice with res judicata effect that was drafted, proposed, and sent by plaintiff's counsel. Plaintiff's counsel who was one of the court-appointed three co-lead counsel in the MDL. Let's assume for a second that Texas law applies. Are you familiar with how Texas treats consent judgments? I can't say that I am, Your Honor. But the Bell v. Moores case, which I cited earlier, was a dismissal with prejudice that wasn't on the merits. I mean, it wasn't a merits-based decision. And the court there still held that it had res judicata effect. Let me suggest this to you, that Texas perhaps treats consent judgments even with prejudice. It looks to the underlying purpose, whether it was to be a settlement, in which case it does apply res judicata, or whether it was just to facilitate a dismissal, in which case it does not. Would that affect how we should look at this case? I'd say no, Your Honor. And I'd go back to the TCBY case from this court from 1993, which was cited by the plaintiffs in their reply brief. And so what TCBY said, and granted this wasn't a Texas law case, but what it did is it had this extended discussion of a Second Circuit case and discussed it with approval. The issue there was that in the Second Circuit case, the plaintiffs' counsel had entered into a stipulation of dismissal with prejudice. They made a mistake. It was uncontested that they'd made a mistake. And what the Second Circuit said, the Eighth Circuit then endorsed, is it doesn't matter. I mean, that is a stipulation of dismissal with prejudice. It carries a certain effect under the law. And the fact that the plaintiffs may not have intended that or may have made a mistake doesn't make a difference. There's no Texas state cases that either side has cited that would point to a different approach to this. These are, again, stipulations like these are entered into every day. Thank you, Your Honor. Your time has expired. Oh, thank you, Your Honors. Very well. Mr. Farrar, your rebuttal? Thank you, Your Honor. I did want to point the court to Rucker v. Smith. That is 768 Northwest 2nd 408. That is a Minnesota Supreme Court case that says failure to address an injustice is reversible error on res judicata. I'm sorry, Court of Appeals opinion. I apologize. So there is precedent for the MDL court's failure to look at the injustice to Mr. Petito would be reversible error. I think it's interesting this court's questions are focusing on the state. So it would apply, which is one of the factors that you have to consider is the success on the merits. Our position is under Texas, res judicata doesn't apply because the Texas Supreme Court said you have to have adequately deliberated and firm on the issue. That clearly never happened in Mr. Petito's MDL case. Under federal law, syntax says it's not res judicata. And the failure to address the injustice to Mr. Petito under Minnesota law means res judicata wouldn't apply. I do want to talk. I'm sorry. There's a question. I do want to address one issue, too, from Chick Kim Chu and Atlantic Coastline that says you have to actually look at what was litigated. Look at what was litigated. And Smith v. Behr says the same thing. Nothing was litigated in Mr. Petito's case. Mr. Holson counsel discussed issues that happened in 2018 and 19. Those didn't happen in Mr. Petito's case. And if the court looks to the Seventh Circuit, Winkler v. Eli Lilly, it makes that point perfectly. There was a discovery order, and the MDL court in there issued an order that said nobody else can seek this type of discovery. Well, the Seventh Circuit reversed that, and they said, no, that's way too broad because that would encompass plaintiffs that weren't even in the MDL when that order came down. So you can't do that because they didn't litigate. It's axiomatic that to relitigate, you have to litigate. So nothing was litigated in Mr. Petito's case, so there's nothing that he can be held to being joined on relitigation. More fundamentally, you know, it is 3M's burden to prove likely irreparable harm. They haven't done that at all. Mr. Hulse talked a little bit about maybe these hundreds of plaintiffs would start to refile. Well, that hasn't happened yet. It's been years and years, so that's not likely. You have to show that the harm is certain, great, and of such immense that there is a clear and present need for equitable relief. That simply wasn't done. The fact that the Texas state court may issue a different protective order isn't irreparable harm. That happens all the time in litigation. There are companies that get sued for their products in state and federal court often. And there's different requirements for protective orders and discovery. And there's going to be inconsistent rulings. That's just part of our federal system. That does not entitle a federal court to come in and enjoin a state court from their orderly process of what they're doing. And that's exactly what happened here. I mean, it is it just can't be lost that the hearing on the summary judgment on race judicata happened the very day the injunction issued. That's not how it's supposed to happen. You're supposed to let the Texas state court play the issue out. That's what all our cases say. That's what CEMTEC, Smith v. Bayer, KM2, they all say let it play out in state court. That's not the federal court's job. And if I don't have any questions, Mr. Petito asks that this court reverse the injunction and let him proceed in Texas. Okay. Seeing none, we appreciate both counsel's arguments today. The case will be submitted and decided in due course.